IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

VS.  CRIMINAL NO. 2:04CR177

ERIC JAMES CLARK and GEORGE KLASSEN

OPINION DENYING MOTION TO SUPPRESS

On May 20, 2005, the Court heard testimony and oral argument in the above styled case addressing the Defendants' motions to suppress. Upon due consideration of the testimony presented, the Court finds that the motions should be denied.

*A. Factual Summary*

October 27, 2004, an airplane arrived at the Tunica Airport. Apparently on that same day the operator of the Tunica Airport contacted the Tunica County Narcotics Division ("the Division") and reported concerns and/or observations that the plane "had been landing at the Airport and [the occupant(s) staying at the Casino over night and that [the] airplane had been landing at the Airport for several months." The operator also informed the Division that the pilot would pay cash for fuel and rent a vehicle paying with cash. An airport employee further noted that after initially being allowed to help with the Defendants' baggage, "the Pilot acted strange, always telling the workers at the Airport that he did not need any help with the bags and would do the unloading himself." The Defendants also requested and were granted permission to drive the rented vehicle up to the plane on the tarmac for loading and unloading their duffle bags. In addition, the Defendants placed sun shades in the windows of the aircraft even in winter months further arousing the curiosity of airport personnel. Finally, the operator conveyed that on one occasion "the airplane had approached at a low

altitude and had appeared to be trying to evade air traffic control at Memphis International Airport."[1]

Based on this information, the Division conducted a dog-sniff investigation of the subject airplane's exterior, a 1978 Cessna. On October 27th, the canine officer "made a positive indication on the left side of the aircraft near a storage compartment." An agent, Babinski, was otherwise engaged and asked the operator to notify the Division when the airplane returned to the airport. Nearly 48 hours after the dog-sniff, the Defendants departed the Tunica Airport on October 29, 2004, without incident.

On November 19, 2004, the operator again contacted the Division advising that the airplane had returned with the same pilot and a passenger. Division agents went to the Tunica Airport and observed the pilot and passenger unload bags from the airplane into a rented vehicle. The agents then followed the Defendants to the Gold Strike Casino and watched them rent a room. From hotel records the agents were able to establish the identities of the pilot, Eric Clark and passenger, George Klassen. The next day Babinski returned to the hotel to continue his surveillance but was unable to located the Defendants' rented vehicle.

This same day November 20, 2004, the Division received a call from the operator indicating that the Defendants had returned to the airport. Bibinski, in plain clothes, left the hotel, arrived at the airport and observed the Defendants loading bags onto the airplane in the same storage compartment the canine had alerted to on October 27th, some 25 days earlier. The agent called for uniformed assistance "so he could interview the pilot and passenger." By the time the other officers arrived the Defendants were preparing for take-off. As the Defendants were taxiing, the uniformed

---

[1] The Defendants sharply contest the introduction and/or use of the suspicious "low landing." Nonetheless, as discussed in detail below, for purposes of justifying the October 27th dog sniff any consideration of the "low altitude landing" is immaterial.

~3939413.wpd         2

agents pulled their marked vehicles in front of the airplane. Once the airplane was stopped, Babinski approached the left side and Defendant Clark opened the pilot's door. With the door open, Babinski identified himself and "smelled the strong odor of marijuana" emanating from the interior of the plane. The Defendants were asked to exit the airplane and behind the front seat the agent "saw in plain view a bag open and what appeared to be marijuana." A search of the craft resulted in the discovery of approximately "150 pounds of marijuana and $27,016.00 in U.S. Currency."

Presumably on this same day, the agents conducted a canine search of the Gold Strike Hotel room the Defendants had rented. The canine "gave a positive reaction in the room for the presence of a controlled substance." The agents also conducted a search of Defendant Clark's rented vehicle in which "a trace amount of marijuana" was found in the trunk and the back seat. Having searched the Defendants' personal luggage, agents also found a letter from the Federal Aviation Administration which threatened to suspend Defendant Clark's commercial pilot certification.

Armed with all of this information, on November 30, 2004, Agent Sammy Aldridge sought and obtained a warrant authorizing the search of data contained on the airplane's global positioning system ("GPS") and global navigation system ("GNS") as well as a cell phone seized during the search of the plane. The Government asserts that evidence obtained from a search of these items "indicate that Clark and Klassen distribute large quantities of marijuana all over the United States."

The Defendants were indicted for possessing with intent to distribute over 50 kilograms (approximately 150 pounds) of marijuana. The Defendants are scheduled for trial August 8, 2005. Seeking to have all the evidence excluded under the fruit of the poisonous tree doctrine, the Defendants attack the validity of the searches and seizures on a variety of grounds including: impracticability, reasonableness, absence of exigent circumstances, absence of reasonable suspicion

and probable cause and staleness.  The Government counters offering that the agents had probable cause to stop and search the aircraft.  Alternatively, the Government suggests, the agents held a reasonable suspicion that criminal activity was afoot justifying the stop which then ripened into probable cause when the agent smelled marijuana.  Hence, the pivotal issue and the primary focus of the suppression hearing is/was whether the October 27th dog sniff was constitutional and was the agents' seizure (stopping the airplane) on November 20th was supported by at least a minimum of reasonable suspicion.

### B.  *Warrantless Searches and Seizures*

The Fourth Amendment protects against illegal searches and seizures.  U.S. Const. amend. IV.  When, as the case is here, a warrantless search or seizure is challenged the government bears the burden of establishing its validity by a preponderance of the evidence.  U.S. v. Matlock, 415 U.S. 164, 178 n.14, 94 S. Ct. 988, 996, 39 L. Ed. 2d 242 (1974) (the burden of proof at suppression hearing should be no greater than proof by a preponderance of the evidence); U.S. v. Wallen, 388 F.3d 161, 164 (5th Cir. 2004) (warrantless searches are presumptively unreasonable).

1.  Canine Sniff

The Fourth Amendment's protections are implicated when a defendant has a reasonable or legitimate expectation of privacy that has been invaded by government action.  U.S. v. Reyes, 349 F.3d 219, 223 (5th Cir. 2003) (no contact dog sniff did not constitute a search).  A person can establish a legitimate expectation of privacy with (1) acts showing an actual expectation of privacy; and (2) by demonstrating that the expectation is one that society is prepared to recognize as reasonable.  U.S. v. Thomas, 120 F.3d 564, 571 (5th Cir. 1997).  Some courts distinguish between the level of privacy afforded areas subjected to a canine's sniff by requiring probable cause for

heightened protection and reasonable suspicion for less protected areas. See U.S. v. Thomas, 757 F.2d 1359 (2d Cir. 1985) (requiring probable cause and warrant for dog sniff outside defendant's apartment); U.S. v. Whitehead, 849 F.2d 849 (4th Cir. 1988) (reasonable suspicion required for dog sniff of a train passenger's luggage in the passenger's sleeping compartment); U.S. v. Beale, 674 F.2d 1327 (9th Cir. 1982) (a dog sniff may be conducted without a warrant if supported by some articulable reason). The Fifth Circuit takes a different approach and considers the use of trained dogs to sniff public areas not to be a search within the meaning of the Fourth Amendment. U.S. v. Hernandez, 976 F.2d 929, 930 (5th Cir. 1992) (canine sniff of car's exterior is not a Fourth Amendment search); Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 477 (5th Cir. 1982) (dog sniff of students' lockers and automobiles parked in public lots did not constitute a search); U.S. v. Goldstein, 635 F.2d 356, 361 (5th Cir. 1981) (canine sniff of luggage at airport is not a search); U.S. v. Marlar, 828 F. Supp. 415, 419 (N.D. Miss. 1993) (canine sniff of an exterior motel room door opening onto a public sidewalk and parking lot, did not intrude on defendants' reasonable expectation of privacy and therefore not a search). However, a canine inspection of someone's person without individualized suspicion is unconstitutional. Horton, 690 F.2d at 477. If the government's activity does not involve a search or seizure "then the government enjoys a virtual carte blanche to do as it pleases." U.S. v. Lovell, 849 F.2d 910, (5th Cir. 1988) (quoting Horton, 690 F.2d at 476)).

The Defendants assert that they held a reasonable legitimate expectation privacy in the airplane. While the Court does not doubt that the Defendants may have held a reasonable expectation of privacy as to the interior of the airplane, the same cannot be said of the plane's exterior and any odors emitting therefrom. U.S. v. Amuny, 767 F.2d 1113, 1128 (5th Cir. 1985)

(defendants possessed a reasonable expectation of privacy in the interior of an aircraft). It is well understood, that a person enjoys the greatest right to privacy in their home. Id. at 1128 (citing U.S. v. Karo, 468 U.S. 705, 714-15, 104 S. Ct. 3296, 3303, 82 L. Ed. 2d 530 (1984)). Conversely, there is far less right to privacy as to automobiles and similarly airplanes. U.S. v. Hunt, 253 F.3d 227, 231 (5th Cir. 2001) (though protected by the Fourth Amendment, an automobile is not subject to the same expectation of privacy as a home). Additionally, given the realities of national security and particularly the heightened security employed at airports today in a post September 11th world, such as routine searches of personal luggage, random searches of vehicles and individuals, it should come as no surprise that the traveling public's expectation of privacy in airports has been greatly diminished. C.f. U.S. v. Kelly, 302 F.3d 291, 293-94 (5th Cir. 2002) (expectation of privacy at boarder crossing is curtailed by routine inspections). Therefore, the Court finds that the Defendants' expectation of privacy as to the space surrounding the aircraft parked on State/County property was not reasonable. More importantly, the use of the canine sniff around the exterior of an airplane was not a search or seizure within the meaning of the Fourth Amendment. The Defendants have failed to satisfy the second prong of the expectation of privacy analysis, i.e., demonstrating a reasonable expectation that society is prepared to recognize. Thus, the Defendants' constitutional right to privacy was not implicated or violated by the dog-sniff on October 27, 2004.

    2. Investigatory Stop

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to police conduct that falls short of a full blown arrest including brief investigatory stops. Terry v. Ohio, 393 U.S. 1, 14, 88 S. Ct. 1868, 1876, 20 L. Ed. 2d 889 (1968). Likewise, investigatory stops of vehicles must be supported by reasonable articulable suspicion of criminal activity or a traffic

violation in order to withstand constitutional scrutiny.  U.S. v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981).  The officer must be able "to articulate something more than inchoate and unparticularized suspicion or hunch."  U.S. v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (internal quotations omitted).  The level of suspicion required for a Terry stop is less demanding than that required to demonstrate the existence of probable cause.  Id. at 7.  When evaluating the validity of an investigatory stop such as this the Court must consider "the totality of the circumstances – the whole picture."  Cortez, 449 U.S. at 417 (seminal case).

The Fifth Circuit has promulgated a two-tiered standard for the reasonable suspicion inquiry: "(1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place."  U.S. v. Grant, 349 F.3d 192, 196 (5th Cir. 2003).  A precise definition of reasonable suspicion is not subject to a formal or neat set of rules.  Sokolow, 490 U.S. at 7.  No single fact is determinative; rather, reasonable suspicion is determined by a fact intensive analysis requiring the court to review all the circumstances collectively.  U.S. v. Neufeld-Neufeld, 338 F.3d 374, 379 (5th Cir. 2003).

Pertinent to the Court's analysis is the officer's knowledge, expertise and experience.  U.S. v. Brignoni- Ponce, 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); U.S. v. Sutton, 636 F.2d 96, 99 (5th Cir. 1981).  Additionally, officers may develop an objective belief that criminal activity is afoot from reliable information received from a reliable informant.  Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); U.S. v. Hopes, 286 F.3d 788 (5th Cir. 2002).  The demeanor and behavior of the suspect may also give rise to reasonable suspicion but may not be sufficient as the only factor present.  U.S. v. Ballard, 573 F.2d 913, 915-16 (5th Cir. 1978) (stop was unreasonable where the suspect's nervousness and a fast walking pace were the only factors

presented). A law enforcement officer with the requisite level of suspicion is entitled to "stop" a suspect for a reasonable period of time in order to verify or dispel his suspicions. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983). However, "once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion." Grant, 349 F.3d at 196.

First it should be noted, contrary to the Defendants' assertion, the Fifth Circuit has held that an airplane may fall within the automobile exception to the warrant requirement. Amuny, 767 F.2d at 1128, n.9. So, to uphold the stop of the aircraft and evidence obtained therefrom the agents must have possessed some reasonable articulable suspicion that criminal activity was afoot. Based on all the facts, that is in the totality of the circumstances, the agents did hold the requisite level of suspicion to justify an investigatory stop.

The Division was first notified by the airport operator who conveyed his own personal suspicion regarding the airplane and the Defendants' behavior including several trips and overnights stays at the casino; paying for fuel with cash; renting a vehicle with cash which was driven up to the plane where the Defendants themselves would load and unload duffle bags each time refusing assistance; the use of sun shields which prevented any view of the plane's interior even during the winter months; and, approaching the airport at low altitudes, in the operator's opinion, possibly attempting to avoid radar detection. Perhaps alone each of these activities would be innocuous but the information considered as a whole was enough to cause the Division to conduct an exterior canine search of the aircraft. Reyes, 349 F.3d at 223 (dog's alert to the passenger compartment of a bus constitutes probable cause to conduct a search). The same "search" the Court has determined did not implicate the Fourth Amendment and was therefore not unconstitutional. The canine

investigation resulted in a positive indication for controlled substances on the left side of the airplane.

The next opportunity for the agents to personally observe the Defendants' routine was on November 19, 2004. Babinski watched as the Defendants unloaded bags from the airplane into a rental vehicle and then followed them to the hotel where their identities were discovered. The following day, Agent Babinski watched as the Defendants loaded bags onto the plane using the same storage compartment the canine had alerted to on October 27th. Assuming at this point Babinski lacked probable cause[2], it cannot be seriously disputed that the agent did clearly hold a reasonable suspicion that criminal activity was afoot. Worthington, 544 F.2d at 1279 (at a minimum DEA agents were justified in stopping the aircraft to investigate their suspicions). More specifically, given the Defendants' pattern of behavior and the results of the canine's investigation, the agent could have reasonably suspected that the Defendants were transporting drugs. Resultantly, the agents were entitled to stop the airplane for a reasonable period of time for a reasonable investigation.

The Court does not find persuasive the Defendants' manufactured exigency argument. U.S. v. Vega, 221 F.3d 789, 800 (5th Cir. 2000) (without justification, officers abandon their surveillance positions and took action they believed would cause the suspects retrieve weapons and drugs). First,

---

[2] Additionally, at this point Babinski had decided to question the Defendants. But Babinski was in plain clothes and needed uniformed officers to help stop the Defendants who were preparing to leave for destinations unknown in an airplane possibly carrying illegal drugs. The agent could not have known when or if the Defendants would return. Though the Government does not overtly assert the existence of exigent circumstances, such an argument is not without merit. See U.S. v. Worthington, 544 F.2d 1275, 1279 (5th Cir. 1977) (reasonable suspicion to conduct an investigatory stop of an airplane ripened into probable cause when the agents observed drugs in plain view); also U.S. v. Coplen, 541 F.2d 211, 215 (9th Cir. 1976) (exigent circumstances justified warrantless search where an aircraft was capable of being moved and the marijuana easily destroyed).

the cases on which the Defendants rely all involve warrantless searches or protective sweeps of suspects' homes that are entitled to greater Fourth Amendment protection. Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); U.S. v. Hunt, 253 F.3d 227, 231 (5th Cir. 2001) (though protected by the Fourth Amendment, an automobile is not subject to the same expectation of privacy as a home; search of an automobile incident to a stop is permissible when support by reasonable suspicion or probable cause); U.S. v. Howard, 106 F.3d 70 (5th Cir. 1997) (exigent circumstances were not manufactured and warrantless entry into defendant's home was justified). Second, none of the cases cited by the Defendants involved the existence of other exceptions (such as the automobile exception) to the warrant requirement but deal only with the so called "exigency exception." U.S. v. Rico, 51 F.3d 495 (5th Cir. 1995) (discussing exigent circumstances versus manufactured exigency as an exception, but finding officer's actions which created the exigent circumstances were reasonable).

Despite the Defendants' insistence and the preference for obtaining warrants, the Court declines to require a warrant at every instance when obtaining one is practical. Rico, 51 F.3d at 502-03 ("agents are not required to obtain a search warrant as soon as it is practicable to do so."). To be sure, had the agents obtained a warrant based on the October 27th dog-sniff the Defendants would have certainly argued that such a warrant was not supported by probable cause. C.f. U.S. v. Dortch, 199 F.3d 193, 197 (5th Cir. 1999) ("once the dogs 'alerted' to the driver's side of the car, probable cause to search the vehicle was established). Furthermore, had the Division obtained a warrant on or about October 27th it is highly unlikely that there would have been drugs inside the aircraft since the Defendants had already unloaded their bags themselves. Nor will the Court second guess the agents' investigation to the extent that it did not trample recognized constitutional protections.

Under the circumstances, the actions taken to stop the taxiing airplane were otherwise reasonable.

Finally, the Court also rejects the Defendants' argument that the dog-sniff was stale in terms of a basis for seizing their taxiing plane. See Sgro v. U.S., 287 U.S. 206, 53 S. Ct. 138, 77 L. Ed 260 (1932). First and foremost, as stated above the dog-sniff of the exterior of the aircraft did not implicate the Constitution. Secondly, it is not clear that the staleness doctrine has been applied to warrantless searches/seizures.[3] However, the passage of time does not automatically preclude a finding of probable cause. Rather, the doctrine of staleness and its application requires a fact specific analysis. The continuing or ongoing pattern of criminal activity with weeks or months between activities does not necessarily render the information stale. See U.S. v. Pena-Rodriguez, 110 F.3d 1120, 1130 (5th Cir. 1997) (noting "a long-standing, ongoing pattern of criminal activity" need not be regarded as stale); U.S. v. Craig, 861 F.2d 818, 822 (5th Cir. 1988); U.S. v. Hartje, 251 F.3d 771 (8th Cir. 2001) (information not stale where drug transactions used in affidavit for warrant occurred several months before warrant was issued); U.S. v. Brinklow, 560 F.2d 1003 (10th Cir. 1977) (11 month interval between observation of contraband and issuance of warrant did not render information stale). Furthermore, the agents suspected that the Defendants were transporting drugs. It is commonly recognized that drugs are easily destroyed and/or consumed. Add to that the fact that the suspected drugs were in a highly mobile airplane and any appearance of staleness dissipates. Craig, 861 F.2d at 823 ("courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched.").

---

[3] At least one court has held that staleness does not per se invalidate reasonable suspicion to conduct an investigatory stop. Denton v. State, 524 So.2d 495 (Fla. Dist. Ct. App. 2d Dist. 1988) ("staleness principle is not fatal to the establishment of a reasonable, well-founded suspicion necessary to support the investigatory stop of a vehicle.").

### 3. Search of the Airplane's Interior

Under the right circumstances reasonable suspicion can ripen into probable cause. Worthington, 544 F.2d at 1280 (reasonable suspicion to conduct an investigatory ripened into probable cause when the agents observed drugs in plain view); also U.S. v. Vasquez, 638 F.2d 507, 524-23 (2d Cir. 1980). Warrantless searches of automobiles, and similarly airplanes, must be supported by probable cause to believe that the vehicle contains contraband or evidence of a crime. California v. Carney, 471 U.S. 386, 1058 S. Ct. 2066, 85 L. Ed. 2d 406 (1985); Carroll v. U.S., 267 U.S. 132, 45 S. Ct. 280 69 L. Ed. 543 (1925); U.S. v. Gooch, 603 F.2d 122, 124-25 (10th Cir. 1979) (likening an airplane to an automobile to justify warrantless search). Probable cause may be established by (1) the direct observation of the officer who is applying for the warrant; or (2) hearsay information furnished by an informant. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The determination of probable cause is evaluated under the totality of the circumstances. U.S. v. Dickey, 102 F.3d 157, 162 (5th Cir. 1996).

Probable cause requires only the probability, and not proof beyond a reason doubt, that criminal activity is afoot. U.S. v. Froman, 355 F.3d 882, 889 (5th Cir. 2004); U.S. v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982). In other words, probable cause exists when the facts are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested or searched committed it." Froman, 355 F.3d at 889. However, probable cause "means something more than mere suspicion." Id.

Having determined that the agents had a legitimate reasonable suspicion justifying the stop, in order to search the interior of the plane the agents must have developed probable cause to believe it contained evidence of a crime. After the Defendants stopped the plane at the agents' request the

pilot, Clark, opened the door. Babinski stated that when the door was opened he detected "a strong odor of marijuana" and then asked that the Defendants exit the plane– a tactic approved of in Pennsylvania v. Mimms, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); also U.S. v. Ibarra-Sanchez, 199 F.3d 753, 761 (5th Cir. 1999). Once the agent smelled marijuana there was sufficient probable cause to search the interior of the airplane. U.S. v. De Witt, 569 F.2d 1338, 1339 (5th Cir. 1978) (probable cause existed to justify search of defendant's car where agent smelled marijuana). However, here in addition to the odor, the agent also saw "in plain view" an open bag containing marijuana which only strengthened the probable cause determination. Worthington, 544 F.2d at 1280, n.4. Consequently, the warrantless search of the interior of the airplane was supported by probable cause and was therefore not unconstitutional.

    4. Search of the Hotel Room and Rental Vehicle

It is unclear if the Defendants were separately challenging the subsequent searches of the hotel room and rented vehicle both of which revealed incriminating evidence. However, in the event they attempted to attack these warrantless searches, the Fifth Circuit has held that an officer is not required to obtain a warrant to search a hotel room where the defendant's right to occupy the room had expired. U.S. v. Blankenship, 923 F.2d 1110, 1117 (5th Cir. 1991). By corollary, the same logic would apply to a rented automobile. Therefore, it was not necessary that the agents obtain a warrant to search and collect evidence from the hotel room after the Defendants check-out or from the rented vehicle after it was returned.

*C. Search Pursuant to Warrant*

The Fourth Amendment protects against illegal searches and seizures. U.S. Const. amend. IV. To effectuate this protection, a search warrant is to be issued by a neutral and detached

magistrate when based on probable cause and supported by oath or affirmation. U.S. v. Cavazos, 288 F.3d 706, 709 (5th Cir. 2002). A magistrate's determination of probable cause should be afforded "great deference." Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (adopting the totality of the circumstances test). Such a determination is consistent with the Fourth Amendment so long as the magistrate makes "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238; U.S. v. Peden, 891 F.2d 514 (5th Cir. 1989). A reviewing court is simply to ensure the magistrate "had a substantial basis for . . . [c]oncluding that probable cause existed." Gates, 462 U.S. at 238-39.

Here, a warrant was issued on November 30, 2004, authorizing the search of the aircraft's GPS and GNS. Without resorting to another detailed discussion, the issuing magistrate was fully informed of all the facts summarized above in a four page written affidavit by a drug enforcement agent. In addition, the magistrate had the benefit of knowing that the lawful search of the airplane on November 20th revealed a substantial amount of marijuana and cash. Consistent with the Court's prior determinations, the magistrate had more than a substantial basis to conclude probable cause existed to believe that the Defendants were engaged in drug trafficking. Furthermore, the GPS and GNS would likely contain information and evidence of the airplane's travels which could assist in completing a drug conspiracy investigation. Accordingly, the warrant permitting a search of the airplane's GP and GN systems was valid.

### D. Conclusion

Consistent with the forgoing discussion the Court concludes that the initial dog-sniff was not

a search within the meaning of the Fourth Amendment. The investigatory stop of the airplane was supported by reasonable articulable suspicion that the Defendants were involved in criminal activity. The related search of the airplane was justified by reasonable suspicion which ripened into probable cause to believe the airplane contained drugs. The succeeding searches of the hotel and rented automobile were similarly valid as was the November 30th warrant. Thus, the Defendants' motions to suppress evidence due to Constitutional violations are denied.

A separate judgment in accordance with this opinion shall issue this day.

This the 1st day of June 2005.

/s/ Glen H. Davidson
Chief Judge